Eugene E. SMITH, Plaintiff-Appellee, Cross-Appellant,

v.

The CONSOLIDATED MUTUAL WATER COMPANY, Defendant-Appellant, Cross-Appellee.

Nos. 85–1101, 85–1126.

United States Court of Appeals, Tenth Circuit.

April 10, 1986.

William E. Benjamin, Boulder, Colo., for plaintiff-appellee, cross-appellant.

Peter J. Wiebe, Jr. (Richard C. Cockrell, with him on briefs), of Cockrell, Quinn & Creighton, Denver, Colo., for defendant-appellant, cross-appellee.

Before BARRETT, McKAY and TACHA, Circuit Judges.

McKAY, Circuit Judge.

At trial, Mr. Eugene Smith contended that Consolidated Mutual Water Company fired him because of his age in violation of the Age Discrimination in Employment Act

(ADEA), 29 U.S.C. §§ 621–634. Consolidated contended that it fired Mr. Smith for falsifying water meter tests. After the jury found for Mr. Smith, the court entered judgment in the amount of $67,028.71, which included "front pay" in lieu of reinstatement.

## I.

■ Consolidated contends that the trial court erred in denying its motion for a directed verdict and its motion for judgment notwithstanding the verdict or a new trial. The issue is simply whether Mr. Smith presented sufficient evidence to permit a reasonable jury to conclude that age was a determinative factor in Consolidated's decision to fire him.

We conclude that the evidence, when taken as a whole and when viewed in the light most favorable to Mr. Smith, is sufficient to support the jury's verdict. First, Mr. Smith's supervisor, who was 20 years younger than Mr. Smith, often referred to him as "an old goat." * Second, Consolidated replaced Mr. Smith with a younger worker. Third, Consolidated never confronted Mr. Smith about his allegedly falsifying meter tests before deciding to discharge him. Fourth, all other employees under the direction of Mr. Smith's supervisor were considerably younger than Mr. Smith. Fifth, the last two evaluations of Mr. Smith's job performance commented that he had been "knocked around a bit over the years," record, vol. 2, at 110, and questioned whether he had the educational background to rate at the top of his pay scale. Finally, Mr. Smith's supervisors criticized him for being slow and unable to meet quotas. Although the evidence is thin and circumstantial, we conclude that, taken as a whole, it is enough to permit a reasonable juror to infer that age was a determinative factor in Consolidated's decision.

## II.

■ Consolidated next contends that the trial court erred in refusing its requested

instruction that Mr. Smith prove, as part of his prima facie case, that he was doing satisfactory work at the time he was fired.

In reviewing this issue, we must consider the instructions given as a whole. *EEOC v. Prudential Federal Savings and Loan Association*, 763 F.2d 1166, 1170 (10th Cir. 1985). As we have stated before, "no particular form of words is essential if the instruction as a whole conveys the correct statement of the applicable law." *Perrell v. Finance America Corp.*, 726 F.2d 654, 656 (10th Cir.1984). In discussing proper instructions in an ADEA action, we recently stated:

> The essence of the correct formulation of the standard of proof is that it requires the jury to focus on the effect of the factor of age. The jury must understand that it is not enough that age discrimination figure in the decision to demote or discharge; age must "make a difference" between termination and retention of the employee in the sense that, "but for" the factor of age discrimination, the employee would not have been adversely affected.

*Id.* at 656.

In the instant case, the trial court instructed the jury, in part, as follows:

> In order to prevail in this claim, under the ADEA, the plaintiff must prove by a preponderance of the evidence: (1) that he was within the protective age group, that is, between the ages of 40 and 70; (2) that he was discharged; and (3) *that his age was a determining factor to the defendant's decision so that but for the plaintiff's age, there would not have been a discharge.*
>
> . . . .
>
> To establish the third element, the plaintiff must prove that the defendant's motivation in discharging the plaintiff was discriminatory, and thus unlawful. It is not unlawful for an employer to discharge an employee for cause....

---

* Although references to Mr. Smith as "an old goat" were arguably made in jest, a reasonable juror could infer that they were meant to be disparaging, regardless of their tone.

You may not base a finding of age discrimination merely on your disagreement with the business judgment of the defendant in this particular case. Your focus is to be on whether the defendant's motivation in discharging the plaintiff was discriminatory, and not on the business judgment.

Record, vol. 2, at 172–73 (emphasis added). The court also instructed the jury that Mr. Smith claimed he was discharged because of his age and not for good cause and that Consolidated claimed that he was discharged "for falsifying water meter tests, in other words, for good cause and not because of his age." Record, vol. 2, at 167–68.

The jury was properly instructed that Mr. Smith had the burden of proving that his discharge was motivated by his age—not by good cause. Because the trial court had already informed the jury of Consolidated's claim of good cause, it properly rejected Consolidated's attempt to insert this claim again in another instruction to avoid giving it undue weight. We agree with the trial court that "in this instance the satisfactory work and the cause are somewhat coexistent." Record, vol. 2, at 153.

### III.

Consolidated next contends that the trial court erred in awarding "front pay" to Mr. Smith. In *EEOC v. Prudential Savings and Loan Association, supra,* we held that future damages are available under the ADEA. As we stated in that case:

The power to grant equitable relief provided in the ADEA clearly stands in addition to the monetary relief available under the FLSA sections and is expressly stated to be without limitation. When we read this section as a whole and construe it liberally, as we must, *see Dartt,* 539 F.2d at 1260, we conclude that the legal and equitable remedies available under the ADEA are not limited either to those specifically listed or to those available under the FLSA, so long as the

relief is "appropriate to effectuate the purposes of [the Act]."

763 F.2d at 1172. Because the trial court articulated its reasons for awarding future damages in lieu of reinstatement and because those reasons are sound, we conclude that the trial court did not err in awarding "front pay" to Mr. Smith.

### IV.

The ADEA provides that "liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. § 626(b). The parties stipulated that the jury would determine liability only, leaving the determination of damages, including a determination on the willfulness issue, to the court. Mr. Smith contends that the trial court erred in determining that Consolidated's actions did not constitute a willful violation of the ADEA.

In *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985), the Supreme Court rejected the notion that an employer's conduct is willful under the ADEA if the employer was cognizant of an appreciable possibility that the employees involved were covered by the ADEA or if the ADEA was "in the picture." *Id.* 105 S.Ct. at 625. Rather, the court found that a violation was willful under the Act if "the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Trans World Airlines, Inc. v. Thurston,* 469 U.S. at ——, 105 S.Ct. at 624.

The thin nature of the evidence presented by Mr. Smith at trial compels us to agree with the trial court that Consolidated's conduct was not "willful" under the standard announced by the Supreme Court in *Trans World Airlines, Inc. v. Thurston, supra.*

AFFIRMED.

BARRETT, Circuit Judge, dissenting in part:

While I have serious doubt that Smith presented sufficient evidence to support the jury's verdict (the majority opinion re-

fers to it as "thin and circumstantial"), I agree with the majority that the district court did not err in its instructions. I dissent, however, from the majority's holding that the district court acted properly in awarding "front pay" to Smith. Consistent with Judge Seth's dissent in *Blim v. Western Elect. Co., Inc.*, 731 F.2d 1473 (10th Cir.1984) and my dissent in part in *E.E.O.C. v. Prudential Federal Savings and Loan Ass'n*, 763 F.2d 1166 (10th Cir.1985), I adhere to the view that the provisions of the ADEA do not justify the awarding of "front pay" under the facts of this case.

In *Blim, supra,* the jury found that the plaintiffs had not been repromoted because of their employer-defendant's willful violation of the ADEA. The trial court awarded each plaintiff "front pay" from the date of judgment to the date of their respective projected dates of retirement. The majority there observed: "[T]he amount equaled the difference between the salary being received at the time the judgment was entered and what each plaintiff would have made until the assumed retirement dates had they been repromoted." 731 F.2d at 1478. The *Blim* majority set the front pay award aside, however, simply because each of the plaintiffs could have been reinstated in the repromoted positions.

Then Chief Judge Seth, in a partial dissent, pertinently observed regarding the awarding of "front pay:"

It must be recognized that the equitable jurisdiction of a federal court should be flexibly and broadly construed to afford complete relief in light of the statutory purposes.... However, such equitable powers cannot be used to expand or override the limited legal remedies available under the ADEA. The Congress very clearly distinguishes between the legal and equitable remedies available under the ADEA.... Allowing front pay runs against the intent of Congress in limiting legal remedies to "unpaid wages and unpaid overtime compensation." The court should not use its equitable powers to frustrate the intent of the statute....

The legal remedies under the ADEA consist of "unpaid minimum wages and unpaid overtime compensation," thus "items of pecuniary or economic loss such as wages, fringe, and other job-related benefits." H.R.Rep. No. 950, 95th Cong., 2d Sess., *reprinted in* [1978] U.S. Code Cong. & Ad.News 504, 535.

Liquidated damages may be recovered when the violation is willful. Liquidated damages are designed to compensate the plaintiff for non-pecuniary losses or highly speculative pecuniary losses. Liquidated damages are a significant factor in this analysis of damages.

The front pay damages are too uncertain to be considered "lost wages" or "lost earned benefits." The possibilities of promotions, legitimate demotions, terminations, or death inject too many unknowns. In these circumstances the award of front pay is too speculative to be considered pecuniary damages under the statute.

731 F.2d at 1481 (citations omitted).

In *E.E.O.C. v. Prudential Federal Sav. and Loan Ass'n, supra,* we upheld the trial court's award of $17,000 as "lost retirement and pension benefits accruing through normal retirement, in lieu of reinstatement" in the same sense that we would there have upheld an award of "front pay," i.e., as an award of future damages in lieu of reinstatement furthering the remedial purposes of the ADEA. 763 F.2d at 1172, 1173. In addition, while we remanded on the issue of willfulness, we allowed the front pay award to stand. Thus, it is clear that the "front pay" or future damage award was treated as distinct from a liquidated damage award. This, I submit, is a double-barrel approach which finds no justification in the Act.

I believe the dissents in *Blim* and *EEOC v. Prudential Federal* stand for the proposition that "front pay" is a *legal* remedy which Congress intended to be awarded, if at all, under the liquidated damage clause of section 626(b) of the ADEA. "Front pay" is not to be awarded *in lieu* of the equitable remedies of reinstatement or pro-

motion provided under section 626(b); rather, front pay is a liquidated damage intended to *compensate* the aggrieved party for losses "too obscure and difficult of proof for estimate other than by liquidated damages," *Overnight Motor Transp. v. Missel*, 316 U.S. 572, 583–84, 62 S.Ct. 1216, 1222–23, 86 L.Ed. 1682 (1942), which under section 626(b) requires a willful violation of the ADEA. Therefore, in the case at bar, front pay may not be awarded because the majority specifically holds that Consolidated Mutual's violation of the ADEA was not willful.

Section 626(b) of the ADEA provides in relevant part:

The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in [enumerated sections of the Fair Labor Standards Act (FLSA) ].... Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of [the FLSA]: *Provided*, That liquidated damages shall be payable only in cases of *willful violations* of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

29 U.S.C. § 626(b) (emphasis added).

In *Lorillard v. Pons*, 434 U.S. 575, 583 n. 11, 98 S.Ct. 866, 871 n. 11, 55 L.Ed.2d 40 (1977) the Supreme Court held that the ADEA created legal rights triggering the right to a jury trial under the Seventh Amendment. In reaching this conclusion, the Court distinguished the legal and equitable remedies available under section 626(b) of the ADEA on the basis of whether the remedy involved money damages:

Section 7(b), 29 U.S.C. § 626(b), does not specify which of the listed categories of relief are legal and which are equitable. However, since it is clear that judgments compelling "employment, reinstatement or promotion" are equitable, see 5 J. Moore, Federal Practice ¶ 38.21 (1977), Congress must have meant the phrase "legal relief" to refer to judgments "enforcing ... liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation."

The court went on to distinguish the remedies available under the ADEA from those available under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, clearly implying that contrary to Title VII, the award of backpay under the ADEA is a legal, not an equitable remedy: "Similarly, the ADEA incorporates the FLSA provision that employers 'shall be liable' for amounts deemed unpaid minimum wages or overtime compensation, while under Title VII, the availability of backpay is a matter of equitable discretion...." *Id.* at 584, 98 S.Ct. at 872 (citation omitted).

Relying on the Supreme Court's reasoning in *Lorillard v. Pons*, draftsmen of House Conference Report No. 95–950 reasoned:

The Supreme Court recently ruled that a plaintiff is entitled to a jury trial in ADEA actions for lost wages, but it did not decide whether there is a right to jury trial on a claim for liquidated damages.... Because *liquidated damages are in the nature of legal relief*, it is manifest that a party is entitled to have the factual issues underlying such a claim decided by a jury.... [A]n award of liquidated damages under the FLSA is not a penalty but rather is available in order to provide *full compensatory relief* for losses that are 'too obscure and difficult of proof for estimate other than by liquidated damages....'

H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 528, 535 (citations omitted and emphasis added).

I conclude from *Lorillard v. Pons, supra,* and the House Conference Report, *supra,* that Congress in enacting the remedial provisions of the ADEA distinguished monetary relief from nonmonetary relief identifying them as legal or equitable remedies, respectively. As the court in *Dickerson v. Deluxe Check Printers, Inc.,* 703 F.2d 276, 280 (8th Cir.1983) stated after reviewing the House Conference Report: "As these statements indicate, liquidated damages are not intended to take the place of equitable relief." Conversely, I do not think a court's equitable powers are intended to replace the legal remedies, including liquidated damages, provided under the statute.

It is well established that the award of future damages is a legal remedy. It is also well known that future damages are speculative and difficult to ascertain. In *EEOC v. Prudential Federal,* we characterized the "front pay" remedy as future damages. As such, the "front pay remedy" is properly a liquidated damage under section 626(b) of the ADEA. Therefore, I maintain that "front pay" may only be awarded, if at all, under the ADEA as a liquidated damage upon a showing that plaintiff's employer willfully violated the ADEA. In the case at bar, the award of "front pay" is unjustified and beyond the court's jurisdiction under the ADEA where no willful violation was found and in fact the plaintiff has prevailed on razor-thin evidence.