Craig A. ANDERSON,
Plaintiff–Appellee/Cross–Appellant,

v.

PHILLIPS PETROLEUM COMPANY,
Defendant–Appellant/Cross–Appellee.

Nos. 86–2716, 87–1019.

United States Court of Appeals,
Tenth Circuit.

Nov. 15, 1988.

Rehearing Denied Jan. 26, 1989.
As Amended Feb. 3, 1989.

David J. Waxse of Shook, Hardy & Bacon, Overland Park, Kan. (Carol F. Fowler of Shook, Hardy & Bacon, Overland Park, Kan., James H. Ottman of Shook, Hardy & Bacon, Kansas City, Mo., William G. Paul, Gen. Counsel, Charles R. Griffin, Associate Gen. Counsel, and C.H. Purdy, Atty., Phillips Petroleum Co., with him on the briefs), for defendant-appellant/cross-appellee.

John H. Fields (Blaise R. Plummer, with him on the briefs) of Carson & Fields, Kansas City, Kan., for plaintiff-appellee/cross-appellant.

Before HOLLOWAY, Chief Judge, and McKAY and BALDOCK, Circuit Judges.

McKAY, Circuit Judge.

On March 9, 1982, Phillips Petroleum Company ("Phillips") publicly announced that it was closing its Kansas City, Kansas, refinery. Phillips' Kansas City management entered a closure agreement with the union workmen's committee which stipulated that the company would

consider qualified employees from the Kansas City refinery for employment at other company facilities where openings exist. The decision as to whether an employee is selected for such employment, the location to which the employee may be transferred and the date of release of such employee from the refinery, shall be determined exclusively by the Company.

Addendum to Brief of Appellee and Cross-Appellant, Exh. B, p. 1.

In order to execute its transfer policy, Phillips instituted a bidding procedure to help place current refinery employees. Under the bidding procedure: Phillips' main office in Bartlesville, Oklahoma, would forward information regarding job openings at other facilities to the Kansas City refinery personnel department; the refinery

personnel department would post hourly job openings throughout the company; interested employees would call personnel and give the department their names, social security numbers, employee numbers, job classifications, and job number(s) on which they were bidding; at the expiration of the bidding period, the personnel department would compile a list of interested applicants and send it to Phillips' central personnel department in Bartlesville which would attach each bidding employee's work history to the bid sheet and send all of the information to the job sites where the openings originated; personnel at the job site would make the final hiring decision. The first job notices were posted in April 1982.

On May 14, 1982, plaintiff/appellee, Mr. Craig Anderson, in his capacity as union president, filed an age discrimination charge with the EEOC in response to complaints by union members between the ages of forty and seventy, alleging that Phillips was discriminating on the basis of age in the execution of its transfer procedure. After the charge was filed, Phillips' Kansas City management and workmen's committee members discussed the charge at union-management meetings. Mr. Anderson subsequently withdrew the age discrimination charge on June 28, 1982.

At the time of the closure, Mr. Anderson was an insulator who was qualified to bid on insulator positions, utility man positions, yardman positions, and entry-level hourly positions in general. Mr. Anderson bid on four jobs during the six-month period before the refinery closed [1]: an insulator's job in Borger, Texas, and three utilityman positions in Hobbs, New Mexico. Mr. Anderson was qualified to bid on all four jobs. In order to make a bid on the Borger, Texas, insulator job, however, applicants were required to take a qualification test. Mr. Anderson did not take the qualification test. Because he did not take the required test, his bid was considered a no-

bid by the job-site employer. Phillips did not transfer Mr. Anderson to any of the jobs he bid on.

The Kansas City refinery closed on August 31, 1982, and employees who had not been transferred to other Phillips facilities were terminated. On February 23, 1983, Mr. Anderson filed his own ADEA charge against Phillips, alleging that Phillips, by failing to transfer him to any of the jobs he bid on, retaliated against him for filing the age discrimination charge in May 1982.

Mr. Anderson sued Phillips, alleging Phillips willfully violated the ADEA by retaliating against him. At trial, Phillips moved for a directed verdict at the end of plaintiff's evidence, arguing that (1) the court lacked jurisdiction in the case because Mr. Anderson filed his retaliation charge with the EEOC after the sixty-day limitations period had run, and (2) that plaintiff had not made his prima facie case. The trial court denied Phillips' motion for a directed verdict. At the close of all the evidence, Phillips again moved for a directed verdict on plaintiff's retaliation claim, on the issue of willfulness, and on his damage claims related to fringe benefits, pension, insurance, and stock benefits, future raises and front pay. The trial court denied Phillips' motion for a directed verdict [2] and sent the case to the jury.

The jury found that Phillips retaliated against Mr. Anderson for filing the age discrimination charge by failing to transfer him during the Kansas City refinery closing. The jury also found that Phillips "willfully" violated the ADEA in its retaliation against Mr. Anderson. The jury awarded $200,000 in actual damages to Mr. Anderson, which included an award for front pay. Phillips moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial on the ground that the evidence was insufficient to support the jury's verdict on the issues of retaliation and willfulness. Phillips argued

---

1. Mr. Anderson actually bid on more than four posted positions; however, prior to trial, the trial court narrowed the number of positions to be considered in the case to those on which Mr. Anderson bid after he filed the age discrimination charge.

2. The parties agreed to strike language in the damages instruction regarding pension and insurance benefits because plaintiff had not submitted evidence relating to those issues.

that the trial court erred in admitting certain exhibits and testimony and in refusing to give certain instructions requested by the defendant. Phillips also argued that the trial court erroneously denied Phillips' motion for a directed verdict on the issue of the timeliness of plaintiff's EEOC charge. In its challenge of the jury's damage award, Phillips argued that the issue of front pay was erroneously submitted to the jury.

The trial court denied both the motion for judgment notwithstanding the verdict and for a new trial on all issues. Based on figures submitted by the parties in memoranda, the trial court awarded liquidated damages in the amount of $23,398.09. Phillips renewed its challenge on appeal. Mr. Anderson cross-appealed, contending that the trial court erred in computing the liquidated damages award.

## I.

We address the timeliness of the filing of Mr. Anderson's retaliation charge with the EEOC first. Under the law of this court, a motion for "directed verdict made by a defendant at the conclusion of plaintiff's main case is waived by proceeding to submit his evidence to the jury unless renewed at the close of the case." *Fleming v. Lawson,* 240 F.2d 119, 120 (10th Cir.1956); *United States v. Alberty,* 63 F.2d 965 (10th Cir.1933). *See also Wegner v. Rodeo Cowboys Ass'n, Inc.,* 417 F.2d 881 (10th Cir.1969) (motion waived although made at close of plaintiff's case and renewed at close of all the evidence because trial court never ruled on motion); and *Brown v. Poland,* 325 F.2d 984 (10th Cir.1963) (motion for directed verdict waived because taken under advisement and never ruled upon).

In the case at hand, Phillips moved for directed verdict on the timeliness issue at the close of plaintiff's case but failed to renew its motion at the close of all the evidence. Under the law of this circuit, Phillips cannot raise the timeliness issue on appeal.

## II.

Phillips also appeals the trial court's denial of its motions for directed verdict, judgment notwithstanding the verdict, and for a new trial. The denial of a motion for directed verdict and a motion for judgment notwithstanding the verdict are tested by the same standard: viewing the evidence and all inferences to be drawn therefrom in the light most favorable to the plaintiff, neither motion may be granted unless "the evidence points but one way and is susceptible to no reasonable inferences which may sustain the position of the party against whom the motion is made." *Symons v. Mueller Co.,* 493 F.2d 972, 976 (10th Cir. 1974). On appeal, a motion for directed verdict is tested by the same rule as that applied in the trial court. *Swearngin v. Sears Roebuck & Co.,* 376 F.2d 637, 639 (10th Cir.1967).

Our circuit applies the general approach for dealing with circumstantial proof in disparate treatment cases adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to retaliation claims under Title VII. *Burrus v. United Telephone Co. of Kansas, Inc.,* 683 F.2d 339 (10th Cir.1982). We apply the same test to ADEA retaliation claims as well. *Lujan v. Walters,* 813 F.2d 1051 (10th Cir. 1987). In order to establish a prima facie case of retaliation, the plaintiff must show: (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer contemporaneously or subsequent to the employee's protected activity; and (3) a causal connection between such activity and the employer's action. *Burrus,* 683 F.2d at 343. Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse action. *Id.* Once the defendant has dispelled the inference of retaliation by establishing a legitimate reason, "the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination." *Id.*

Although the evidence in this case is very thin and purely circumstantial, we find that the evidence and reasonable inferences flowing therefrom were sufficient to support Mr. Anderson's claim of retaliation. Mr. Anderson's evidence indisputably showed that he engaged in protected activity under the ADEA by filing the age-discrimination charge and that Phillips took adverse action subsequent to the charge, i.e., he was not transferred before the refinery was permanently closed. The dispute in this case centers upon whether Phillips' failure to transfer Mr. Anderson was causally connected to his participation in protected activity.

Phillips argues that there can be no causal connection unless the actual individual who took the adverse action against the employee was aware of the employee's protected activity. Assuming, without deciding, that a plaintiff must show that the individual who took the adverse action against him knew of the employee's protected activity,[3] there was evidence in the record from which the jury could infer that the individual decisionmakers in this case were aware that Mr. Anderson had filed an age discrimination charge. For example, Phillips' witnesses who were responsible for hiring at Borger and Hobbs testified that they were unaware of Mr. Anderson's charge. However, the jury could have inferred that they were aware of the charge if it believed testimony of the supervisor of the central clearing house functions in Bartlesville under the transfer policy that he sometimes communicated adverse job-related information by telephone after he forwarded an employee's name and work history to the hiring locations. The supervisor testified that he was aware of Mr. Anderson's age discrimination charge at the time of the refinery closing.

In addition, there is evidence which, if believed, tends to show that Phillips' reason for not transferring Mr. Anderson to Borger, Texas, was pretextual. Mr. Anderson's testimony and documentary evidence as well show that the notice regarding the Borger, Texas, job posted by refinery personnel did not indicate that a qualification test was required although similar job notices clearly stated whether one was. Mr. Anderson also testified that he was not told a test was required until after he had filed the age discrimination charge. From this evidence, a jury could infer that Phillips' refusal to transfer Mr. Anderson to the Borger job because he had not taken the test was pretextual.

Because we believe that there is sufficient evidence that the persons responsible for hiring at the job sites may have been aware of Mr. Anderson's protected activity and that Phillips' reason for failing to transfer Mr. Anderson to Borger, Texas, was pretextual, we find that reasonable minds could differ and that the trial court properly submitted the issue of retaliation to the jury.

### III.

We reverse, however, the verdict on the "willfulness" claim. A prevailing ADEA plaintiff is entitled to liquidated damages "only in cases of willful violations." 29 U.S.C. § 626(b). Congress intended to create a two-tiered liability scheme in which liquidated damages are "punitive in nature." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985). In *Thurston*, the Supreme Court found that "a violation of the [Act] was 'willful' if 'the employer ... knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" *Id.* at 126, 105 S.Ct. at 624. In order to impose liquidated damages under the ADEA for a "willful" violation of the act, the plaintiff must show something more than mere knowledge on the part of the

3. *See Gunther v. County of Washington*, 623 F.2d 1303, 1316 (9th Cir.1979) (no evidence to infer individual responsible for adverse decision actually knew of employees' protected activity; therefore, plaintiffs did not prove necessary link between their activity and defendant's adverse action that would establish prima facie case); *accord McCollum v. Bolger*, 794 F.2d 602 (11th Cir.1986), *cert. denied*, 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Talley v. United States Postal Serv.*, 720 F.2d 505 (8th Cir.1983), *cert. denied*, 466 U.S. 952, 104 S.Ct. 2155, 80 L.Ed.2d 541 (1984); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793 (9th Cir.1982).

employer of the potential applicability of the ADEA. *Id.* at 127, 105 S.Ct. at 624.

Although Mr. Anderson contends that a jury verdict of retaliation against a defendant necessarily requires a finding of willfulness, we decline to make such a rule. Our court recently interpreted *Thurston* for this circuit in *Cooper v. Asplundh Tree Expert Co.,* 836 F.2d 1544 (10th Cir.1988). In *Cooper,* we felt that the "knew or reckless disregard" standard was difficult to apply in disparate treatment cases in which an individual employee alleges intentional discrimination aimed specifically against him, *id.* at 1549, because "arguably almost every finding of liability will also support a finding of willfulness." *Id.* After a thorough and thoughtful survey of the law of our sister circuits, we rejected both the view that a finding against willfulness cannot consistently stand with a jury finding of intentional discrimination, *Rose v. Hearst Magazines Division, the Heart Corp.,* 814 F.2d 491, 493 (7th Cir.1987), and the view that a willfulness determination must be supported by proof of "outrageous conduct." *Dreyer v. Arco Chemical Co.,* 801 F.2d 651, 658 (3d Cir.1986).

Our court has adopted an intermediate approach:

> [W]e believe that *Thurston* did not intend that every employer tagged with an ADEA violation, even in a disparate treatment case, must be penalized for a willful violation.... we believe the best [articulation] is one which builds upon the widely accepted "determinative factor" standard for a finding of liability. Under the standard we adopt today, a basic finding of liability under the Act requires that age be at least one of possibly several "determinative factors" in the employer's conduct; for a willful violation to exist in a disparate treatment claim, a factfinder must find that age was the *predominant* factor in the employer's decision.

*Cooper,* 836 F.2d at 1551. The use of the predominant factor test "preserves the congressional intent to retain a two-tiered liability scheme." *Id.*

This case was briefed and argued before our decision in *Cooper.* Prior to *Cooper,* our court applied *Thurston*'s "knew or reckless disregard" standard on a case-by-case basis. In *Furr v. AT & T Technologies, Inc.,* 824 F.2d 1537 (10th Cir.1987), our court affirmed the trial court's finding of a willful violation based upon plaintiff's evidence in a company management report which showed an overall company policy of age discrimination. *Id.* at 1547. In addition, there was substantial, although contested, evidence of numerous statements by management personnel that the plaintiff was "too damned old" to be promoted, to learn new technologies, to supervise or manage, and to have a future in installation. *Id.* One manager also said he could not help the plaintiff because of his age. *Id.* Our court felt this evidence showed that the defendant " 'wholly disregard[ed] the law ... without making any reasonable effort to determine whether the plan he is following would constitute a violation of the law.' " *Id.* at 1547 (*citing Nabob Oil Co. v. United States,* 190 F.2d 478 (10th Cir.), *cert. denied,* 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 659 (1951)).

In *Smith v. Consolidated Mutual Water Co.,* 787 F.2d 1441 (10th Cir.1986), our court affirmed the trial court's finding that the defendant's conduct was not "willful" under the *Thurston* standard. Plaintiff's evidence in *Smith* showed that his younger supervisor called him "an old goat"; he was replaced by a younger worker, he was not confronted with his allegedly dishonest conduct, every other employee in his section was considerably younger than himself, and his job evaluations stated "he had been 'knocked around a bit over the years.' " *Id.* at 1442. Although the "thin and circumstantial" evidence supporting the age discrimination charge was sufficient to affirm the trial court's denial of the defendant's motions for a directed verdict, j.n.o.v. and new trial, it was too thin to support a finding of willfulness under the ADEA. *Id.* at 1442, 1443.

In this case, the evidence is also "thin and circumstantial," barely sufficing to support Mr. Anderson's claim of retalia-

tion, much less a finding of "something more" which would support an award of liquidated damages under *Thurston.* Mr. Anderson presented evidence that refinery management personnel told him if he did not withdraw the age charge, transfer jobs might "dry up." He also testified that management began to treat him differently after the charge was filed. Phillips' evidence showed that there were legitimate nondiscriminatory reasons for its failure to transfer Mr. Anderson. First, he did not take the qualification test required for the Borger job. Second, Phillips submitted evidence that the Hobbs, New Mexico, facility was involved in a reduction in force by Phillips in its geographic area and the open job positions he bid on were filled by re-employables from within that area pursuant to its union contract. Although one position was filled by an outsider, Phillips' evidence showed that he had been offered his position prior to the reduction-in-force hiring restrictions.

With so much evidence of legitimate, nondiscriminatory reasons for Phillips' failure to transfer Mr. Anderson, we cannot say that reasonable minds would have found retaliation to be the predominant factor in Phillips' actions. In addition, this circumstantial evidence, while sufficient to create a jury issue with regard to his retaliation charge, is too thin to support a reasonable inference of willfulness under prior case law. We reverse the finding of willfulness and the liquidated damages award ordered by the trial court. Therefore, we need not reach the points of appeal raised by Mr. Anderson regarding the court's computation of the liquidated damages award.

## IV.

■ We next determine whether the trial court abused its discretion in denying Phillips' motion for a new trial. A trial court may grant a new trial if the verdict is against the weight of the evidence or if prejudicial error has occurred. *Holmes v. Wack,* 464 F.2d 86 (10th Cir.1972). Because we have reversed the front pay award, we find that, if error, the admission of evidence by the court regarding future salary and salary increases was harmless.

■ Phillips also challenges the admission of evidence regarding the underlying age discrimination charge filed by Mr. Anderson. The evidence admitted by the trial court essentially laid the foundation for understanding the circumstances which gave rise to the retaliation charge. In view of the fact that the jury answered a special interrogatory narrowly tailored to address solely the retaliation issue and that the judge issued an instruction cautioning the jury not to consider the merits of the age charge, we find that the admission of documentary evidence and testimony concerning the underlying charge was not prejudicial error. Furthermore, although the evidence is thin, the trial court's finding that the verdict was not against the weight of the evidence was not an abuse of discretion. Because no prejudicial error occurred and the verdict was not against the weight of the evidence, the trial court did not abuse its discretion by refusing to grant Phillips' motion for a new trial.

## V.

■ It is clear in the Tenth Circuit that front pay or future damages is an appropriate remedy under the ADEA. *EEOC v. Prudential Federal Savings and Loan Association,* 763 F.2d 1166, 1173 (10th Cir. 1985). It appears equally clear that an order of reinstatement and an award of front pay are mutually exclusive remedies under the case law in our circuit. *See, e.g., Bruno v. Western Electric Co.,* 829 F.2d 957, 966 (10th Cir.1987) ("front pay is merely a substitute for reinstatement"); and *Blim v. Western Electric Co.,* 731 F.2d 1473, 1479 (10th Cir.), *cert. denied,* 469 U.S. 874, 105 S.Ct. 233, 83 L.Ed.2d 161 (1984) (trial court erred in granting front pay "instead of" or "rather than" reinstatement). Essentially, reinstatement and an award of front pay are alternative remedies for making an ADEA plaintiff whole, *i.e.,* returning him as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct.

We reject Phillips' contention that Mr. Anderson is not entitled to reinstatement because he did not request reinstatement as a remedy or as a prerequisite to front pay. The trial court "shall grant the relief to which the party in whose favor [a final judgment] is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed.R.Civ.P. 54(c). *See Fitzgerald v. Sirloin Stockade, Inc.,* 624 F.2d 945 (10th Cir.1980). Reinstatement is the preferred remedy under the ADEA, and should be ordered whenever it is appropriate. *Blim,* 731 F.2d at 1479. If reinstatement is inappropriate, however, the plaintiff is entitled to an award of front pay. Our court has expressed one instance in which reinstatement is not an appropriate remedy: if "the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *Prudential,* 763 F.2d at 1172. Our sister circuits have approved other situations in which front pay may be appropriate; for example, if no comparable positions are available, *Whittlesey v. Union Carbide Corp.,* 742 F.2d 724, 728 (2d Cir.1984); if the employer-employee relationship has been irreparably damaged by animosity caused by the lawsuit, *id.;* if the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment, *id., McNeil v. Economics Laboratory, Inc.* 800 F.2d 111, 118 (7th Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); or if the time period for which front pay is to be awarded is relatively short (plaintiff very close to retirement), *McNeil,* 800 F.2d at 118.

Although *Prudential* can be read broadly to include circumstances under which an award of front pay is appropriate other than workplace hostility, *see Eivins v. Adventist Health Systems,* 660 F.Supp. 1255, 1263 (D.Kan.1987), we need not consider other circumstances because reinstatement is clearly appropriate in this case. There is no hostility between Mr. Anderson and Phillips. In fact, Phillips rehired Mr. Anderson in November 1985 and has regularly promoted him since then. Although the positions Mr. Anderson bid on have been filled or terminated, there is no evidence showing that the company could not easily transfer Mr. Anderson to a comparable position and reinstate his seniority and benefits with the company. In addition, Mr. Anderson is still at least twenty-five years away from retirement. In any event, because a trial court that awards front pay in lieu of reinstatement must "articulate the evidence and rationale underlying its decision," *Prudential,* 763 F.2d at 1173, we would have to remand to the trial court for that articulation before we could address this point on appeal.

The trial court seemed to assume, without deciding, that Mr. Anderson was "reinstated" when he was rehired. We remand this case to the district court for a determination whether Mr. Anderson was "reinstated" by Phillips when he was rehired in November 1985. If the district court finds that Mr. Anderson was reinstated in 1985, that is his sole remedy; the front pay award must be reversed. If, however, the court finds that Mr. Anderson was merely rehired, but not reinstated, it should order reinstatement consistent with this opinion. We also remand for a recalculation of the damages award, reduced by the amount awarded as front pay.

## VI.

In conclusion, we affirm the retaliation verdict and the trial court's disposition of the timeliness issue. We reverse the jury's verdict on "willfulness" as well as the liquidated damages award. We reverse the front pay award and remand to the trial court for a determination on whether Mr. Anderson was reinstated. We also remand for a recalculation of damages, reduced by the reversed front pay award and the reversed liquidated damages award.