Lance CARR, Plaintiff,

v.

The FORT MORGAN SCHOOL DISTRICT, a body corporate.

No. 96–WY–670–AJ.

United States District Court, D. Colorado.

April 17, 1998.

John A. Culver, Seth J. Benezra, Roman, Benezra & Culver, LLC, Lakewood, CO, for plaintiff.

Daniel M. Fowler, Katherine Taylor Eubank, Fowler, Schimberg & Flanagan, PC, Denver, CO, for defendants.

**ORDER GRANTING INSTATEMENT, AWARDING PREJUDGMENT INTEREST AND BACK PAY, AND DENYING REQUEST FOR INJUNCTIVE RELIEF**

ALAN B. JOHNSON, Chief Judge.

The plaintiff's Motion for Instatement, Front Pay, Injunctive Relief and Pre–Judgment Interest came before the Court for hearing on December 16, 1997. Counsel for the parties appeared, presented evidence and their arguments with respect to plaintiff's request on all remaining equitable issues that must be decided by this Court following the jury trial held earlier in this matter. The Court, having considered the motions and responses, the arguments of counsel, the applicable law, and being fully advised, FINDS and ORDERS as follows:

### Background

After 9 days of trial, the jury verdict determined that the defendant had intentionally discriminated against plaintiff. It awarded plaintiff back pay in the amount of $55,000, compensatory damages in the amount of $10,000, and rendered an advisory verdict awarding front pay in the amount of $20,000. It also found that plaintiff failed to take reasonable steps to mitigate his damages, and reduced the front pay and back pay damages by $15,000.00.

In the pending motion plaintiff seeks the following post-trial relief: 1) that the Court order instatement into a mathematics teaching position in the high school or middle school in the Ft. Morgan School District for the 1998–1999 school year; 2) (alternatively) that the Court order defendant to instate plaintiff into the first available mathematics teaching position at either the high school or middle school; 3) that the Court award front pay from date of trial until the date he is instated into a math position with the district, or a total of three years front pay if the request for instatement is denied; 4) that the Court enjoin the district from continuing its practice of discrimination against disabled applicants to and require it to provide training for its hiring decision makers; and 5) that the Court award plaintiff pre-judgment interest on the award of back pay.

Plaintiff argues that instatement is the traditional and preferred equitable remedy in cases involving employment discrimination, where the "make whole" concept governs to assure that the victim is restored to the position he would have been in were it not for the unlawful discrimination. Plaintiff recognizes that instatement for 1997–1998 is not feasible since there are already one-year contracts in place with the district's mathematics instructors. However, ordering instatement for 1998–99, even if it may result in non-renewal of a current mathematics instructor, is necessary and appropriate in plaintiff's view. Plaintiff cites cases where courts have considered similar situations which would result in bumping existing employees in order to accomplish instatement or reinstatement. These cases note the bumping is an extraordinary remedy to be used sparingly and only when a careful balancing of the equities indicates that absent bumping, plaintiff's relief will be unjustly inadequate. He argues that waiting will simply require non-renewal of a mathematics teacher's contract in order to accommodate instatement of plaintiff.

Plaintiff argues relief will be unjustly inadequate if he is not instated into a full-time position. It is only feasible to teach at one of three rural districts near his home—Ft. Morgan, Brush or Wiggins. The evidence at trial established that Brush and Wiggins were not likely to have vacancies and the distance between plaintiff's home (and his caregivers) makes employment at those schools extremely burdensome for his family. Plaintiff is not qualified to teach full time at local community colleges.

Plaintiff asserts that because the defendant engaged in intentional discrimination, it refuses to recognize its own wrongdoing and states it intends to continue business as usual. A press release the school district issued the same day of the jury verdict is attached to plaintiff's submissions as an example of such intractability. To further the purposes of the ADA and the FRA and deter future acts of discrimination, instatement is appropriate.

Alternatively, plaintiff argues for an order requiring instatement in the next available mathematics teaching position at either the middle or high schools with the court ordering front pay on a weekly basis until a vacancy is available for instatement.

If instatement is not ordered, plaintiff seeks front pay for at least three years. He relies on Dr. Pacey's testimony that plaintiff's losses for the first three years after were $111,000 after reducing to net present value.

Plaintiff also seeks prejudgment interest on the full back pay award of $55,000, at the Internal Revenue Service prime rate, which was from September 1995 to present date 9% (except for April 1, 1996 to June 30, 1996 when the rate was 8%).

Defendant opposes the motion. Defendant contends that the plaintiff has never requested instatement with defendant and that he, at all times, sought front pay in lieu of instatement. Defendant argues that, if front pay is considered a future pecuniary loss, it would be a jury award for compensatory damages which would be binding.

Defendant asserts the court has discretion to award front pay and/or instatement, and that instatement is not a mandatory remedy as defendant believes plaintiff has argued. Defendant argues that the press release and the various letters to the editor written by the plaintiff's parents, as well plaintiff's counsel's contacts with the press, all demonstrate the hostile relationship between the parties that makes instatement not workable. Defendant argues that plaintiff waived his right to request instatement, arguing that plaintiff agreed to submit the front pay (equitable) issues to the jury in an advisory capacity.

Defendant asserts that the jury's advisory verdict relating to front pay should be adhered to or even reduced. It argues that it was unclear from the facts at trial whether plaintiff, if he had been first interviewed for a job and then offered a job, would have taken the job as he did not yet have a teaching certificate and had not applied for one. Defendant asserts that even if plaintiff had taken the job, it is unknown how long he would have remained working at the job, considering he had not worked full work days and had significant physical needs. Defendant also contends that it is not clear that plaintiff wanted to be a teacher above all other jobs and might have chosen to pursue further schooling, or do more writing or computer work. Defendant states also that it is not known if plaintiff would have been dismissed from a teaching position for legitimate reasons.

Defendant asserts that the environment created by the litigation makes it impossible to instate plaintiff into a mathematics teaching position. There are no available math teaching positions at the high school. There has been a great deal of animosity generated by the litigation between plaintiff, his family and school district, irreparably damaging the relationship. Defendant opposes the plaintiff's request to bump an incumbent teacher and explains that there is no way to minimize the hardship on the person who is bumped. Defendant opposes the request for injunctive relief prohibiting the defendant from engaging in further disability discrimination and requiring hiring officials to receive training concerning compliance with anti-discrimination laws.

Defendant also opposes the plaintiff's proposed calculations regarding prejudgment interest. Defendant argues that the $15,000 should be reduced from the back pay award causing plaintiff to receive only $40,000 in back pay. Defendant argues that the Court prejudgment interest rate proposed by plaintiff is too high and should be calculated annually in the discretion of the court.

In his reply, plaintiff disputes the defendant's contention that he waived his right to seek instatement and also disputes that instatement was never discussed. He notes,

correctly, that instatement is an equitable remedy to be decided by the Court, not the jury. Plaintiff contends he will not receive a windfall if instated and that instatement further's the ADA's goals of eliminating and deterring future acts of discrimination.

Plaintiff also vigorously disputes the contention that the environment created by the litigation makes it impossible to instate plaintiff. He has worked as a substitute teacher for defendant during the litigation. Plaintiff argues that defendant's hostility to plaintiff arising from the "fact that he exposed its intentional discrimination" is no reason to deny instatement, where instatement is necessary to make plaintiff whole and fulfill underlying federal policies.

### Discussion

**1. Front Pay/Instatement Issues**

 In a Title VII[1] case asserting violations of a plaintiff's civil rights, "reinstatement is the preferred remedy." *Jackson v. City of Albuquerque*, 890 F.2d 225, (10th Cir.1989), quoting *E.E.O.C. v. Prudential Federal Savings and Loan Ass'n*, 763 F.2d 1166 (10th Cir.1985), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985); *Starrett v. Wadley*, 876 F.2d 808, 824 (10th Cir.1989); *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1157 (10th Cir.1990) (ADEA case); *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 637 (10th Cir.1989) (ADEA case); *Lemons v. ICM Mortgage Corp.*, 941 F.2d 1213 (Table) (Unpublished Disposition), Text at 1991 WL 164275, at **2 (10th Cir.1991); *Ziegler v. K Mart Corp.*, 74 F.3d 1250 (Table)(Unpublished Disposition), Text at 1996 WL 8021, at **6 (10th Cir.1996) ("Under Title VII, the court may award a successful plaintiff any appropriate relief, including reinstatement, back pay or 'any other equitable relief' the court deems appropriate."); *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1158–1159 (6th Cir.1985) (providing guidelines for determining appropriate front pay); *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988).

 Although equitable relief, including an order of instatement, is the preferred remedy, where it is not feasible, a plaintiff will be entitled to front pay. *Acrey v. American Sheep Industry Assoc.*, 981 F.2d 1569, 1576 (10th Cir.1992); *Spulak*, 894 F.2d at 1157. An order of instatement and an award of front pay are mutually exclusive remedies in this circuit. *Anderson v. Phillips Petroleum Co.*, 861 F.2d at 637. Either remedy should be fashioned to make the plaintiff whole or return him as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct. *Id.* at 638. Instatement may not be an appropriate remedy where hostility or animosity between the parties, as a practical matter, makes a productive and amicable working situation possible. *Id.*

One of the essential purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper v. Moody*, 422 U.S. 405, 418–19, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975). Where the legal injury is economic,

> [t]he general rule is, that when a wrong has been done, and the law gives a remedy, the compensation shall be equal to the injury. The latter is the standard by which the former is to be measured. The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed.

*Id.* at 418–19, 95 S.Ct. at 2372 (quoting *Wicker v. Hoppock*, 73 U.S. (6 Wall.) 94, 99, 18 L.Ed. 752 (1867)). The *Albemarle Paper* Court, in holding that back pay is presumptively due successful Title VII plaintiffs, emphasized congressional intent in fashioning relief under Title VII:

> "The provisions of this subsection are intended to give the courts wide discretion in exercising their equitable powers to fashion the most complete relief possible. In dealing with the present section 706(g) the courts have stressed that the

---

1. The Americans with Disabilities Act, in 42 U.S.C. § 12133, incorporates remedy provisions of the Rehabilitation Act, 29 U.S.C. § 794a. The Rehabilitation Act in turn incorporates remedy

provisions of the Civil Rights Act of 1964, including remedies available under Title VII. See e.g., 29 U.S.C. § 794a.

scope of relief under that section of the Act is intended to make the victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination."

*Id.*, 422 U.S. at 421, 95 S.Ct. at 2373 (quoting 118 Cong.Rec. 7168 (1972) (Section by Section Analysis introduced by Senator Williams to accompany the conference Committee Report on the 1972 Act)). *See also Franks v. Bowman Transportation Co.*, 424 U.S. 747, 774, 96 S.Ct. 1251, 1269, 47 L.Ed.2d 444 (1976); *Patterson v. American Tobacco Co.*, 535 F.2d 257, 269 (4th Cir.1976), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1977).

\* \* \* \* \* \*

■ Therefore, if the trial court determines that an award of back pay does not fully redress a Title VII plaintiff's injuries, and reinstatement is not possible, an award of front pay is sometimes appropriate in order to effectuate fully the "make whole" purposes of Title VII.

The front pay issue in Title VII litigation is one of first impression for this Circuit. In *Davis v. Combustion Engineering*, 742 F.2d 916, 922–23 (6th Cir.1984), we held front pay to be an appropriate remedy under the Age Discrimination in Employment Act. We echo the Davis court's observation that front pay "does not lend itself to a per se rule.... [I]t must be governed by the sound discretion of the trial court and may not be appropriate in all cases." *Id.* Awards of front pay should be evaluated under the standards applied to all Title VII relief: whether the award will aid in ending illegal discrimination and rectifying the harm it causes. *See Thompson v. Sawyer*, 678 F.2d 257, 259 (D.C.Cir.1982).

The unique nature of plaintiff's former position renders a calculation of a front pay award in this case particularly difficult. While a district court has considerable experience in calculating future earnings, some basis must appear in the record for such an award. some of the factors which district courts have employed to alleviate the speculative nature of future damages awards include an employee's duty to mitigate, "the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damages awards." *Koyen v. Consolidated Edison Co.*, 560 F.Supp. 1161, 1168–69 (S.D.N.Y.1983).

The record from the court below contains no indication of the basis for the front pay award. The cut-off date for the award is within the discretion of the district court, *Goss v. Exxon Office Systems, Inc.*, 747 F.2d 885 (3d Cir.1984) yet evidence must be submitted from which a reasonable projection can be made. Such an estimation must involve more than mere guesswork. The cost of obtaining a college degree, cited by the plaintiff as a basis for the front pay award, cannot be considered a post-judgment effect of defendant's discrimination. The front pay award is limited to the amount required to place the plaintiff in the position she would have occupied in the absence of discrimination. *Shore v. Federal Express Corp.*, 777 F.2d at 1159–1160.

The Tenth Circuit generally concurs in this analysis. It stated, in *E.E.O.C. v. Prudential Federal Savings and Loan Assoc.*, the following:

Reinstatement may not be appropriate, however, when the employer has exhibited such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible.... Under such circumstances, an award of future damages in lieu of reinstatement furthers the remedial purposes of the ADEA by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct.... If this

were not the case, an employer could avoid the purpose of the Act simply by making reinstatement so unattractive and infeasible that the wronged employee would not want to return. . . .

We recognize that future damages have been criticized as uncertain and speculative. . . . However, given our conclusion that they are available under the ADEA, "[t]he mere fact that damages may be difficult of computation should not exonerate a wrongdoer from liability. 'The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.' " . . . Courts are able to alleviate the uncertainty of future damages by taking into account a discharged employee's duty to mitigate, "the availability of employment opportunities, the period within which one by reasonable efforts may be re-employed, the employee's work and life expectancy, the discount tables to determine the present value of future damages and other factors that are pertinent on prospective damages awards."
. . .

*E.E.O.C. v. Prudential Federal Savings and Loan Assoc.,* 763 F.2d at 1172–1173 (citations omitted).

The Tenth Circuit has also made clear that its views regarding front pay and the purposes to be served by such an award are not "unduly restrictive." *Carter v. Sedgwick County, Kansas,* 36 F.3d 952, 957 (10th Cir. 1994). It continued in that opinion, stating:

The district court is vested with considerable discretion in formulating remedies for Title VII violations. . . . However, the exercise of this discretion must be guided by the fact that "one of the central purposes of Title VII is 'to make persons whole for injuries suffered on account of unlawful employment discrimination' " . . . We have pointed out that "[i]n general, courts should strive to award the 'most complete relief possible.' " . . .

In keeping with the "make whole" nature of the remedies required under Title VII, this court in *Carter II* stated that a district court, when fashioning a front pay award, should ascertain the amount "re-

quired to compensate a victim for the continuing future effects of discrimination until the victim can be made whole." . . . We therefore directed the court on remand "to determine the time period required in order to make plaintiff whole." . . . Ms. Carter argues persuasively that, based on the best records available, the six-month award here of $2,245.50 [the difference between her former and current salary for a six-month period] does not make her whole. Defendants do not dispute this assertion, citing instead to cases from other circuits that do not focus on the required "make whole" nature of Title VII relief. Accordingly, we conclude that the district court abused its discretion in its front pay award because the award does not adequately remedy the effects of defendants' past discrimination as required by the law and the mandate of *Carter II.* Although we recognized that in *Carter II* we directed the court to set an ending date for front pay based on more than guesswork, we also instructed that the court set a time period sufficient to make plaintiff whole. . . . Because the court did not do so, we must remand for further proceedings on the calculation of an appropriate award of front pay.

*Carter v. Sedgwick County, Kansas,* 36 F.3d at 957 (citations omitted). *See also Carter v. Sedgwick County, Kansas,* 929 F.2d 1501, 1505 (10th Cir.1991), (remanding for recalculation of front pay award "to reflect plaintiff's earning capacity and to determine the time period required in order to make plaintiff whole. We note that the determination of the appropriate cut-off date for a front pay award is within the district court's discretion, but that the determination must be based on 'more than mere guesswork' ", and also citing *Shore v. Federal Express Corp.,* 777 F.2d 1155, 1160 (6th Cir.1985)).

 This Court has determined that instatement in this case is a feasible alternative. Plaintiff acknowledged in his testimony that there was animosity between the parties. Plaintiff also noted that he had, during the course of the litigation, worked as a substitute teacher in the Fort Morgan school district. He believed he was capable of

weathering any future adversity that he might be confronted with as a result of any order requiring instatement. After the hearing on the post-trial motions, it was evident to the Court that the defendant would not willingly welcome plaintiff into its teaching ranks. However, other than bare statements of the principal and superintendent, letters to the editor written by plaintiff's parents, and the district's post-trial press release, there was little evidence to suggest that the relations between the parties were actually so strained that insurmountable hostility would prevent plaintiff from performing teaching duties in the district. After having had an opportunity to view the parties and observe them during hearings and trial, the Court finds that no evidence of hostility exists which would preclude plaintiff from effectively performing teaching duties so as to compel the Court to forego the preferred remedy of instatement and order front pay in lieu of instatement.

Therefore, the Court will order that the defendant instate plaintiff as a first year mathematics teacher in the Fort Morgan School District forthwith for the 1998–1999 academic year. The plaintiff shall be instated on the same terms and conditions as any other first year teacher employed by Fort Morgan School District. This disposition best facilitates the remedial purposes of the ADA and is in accord with the jury's finding that plaintiff was qualified for the full-time mathematics position he sought and that he was capable of performing all the essential functions of the position with or without reasonable accommodation.

There are numerous considerations that dictate instatement as the most appropriate remedy in this case, including plaintiff's limited job opportunities in the Fort Morgan area and his need to remain in that area for very real and pragmatic reasons. This disposition allows plaintiff to pursue his desired teaching career in close proximity to his family, who are his primary caregivers and provide much assistance to him on a day-to-day basis.

Accordingly, and for the foregoing reasons, the Court orders that defendant, Fort Morgan School District, instate plaintiff as a full-time mathematics teacher on the same terms and conditions as any other first year teacher employed by the district for the 1998–1999 academic year.

### 2. Request for Injunctive Relief

■ Plaintiff has also requested that the Court enjoin the district from continuing its practice of discrimination against disabled applicants to and require it to provide training for its hiring decision makers. The plaintiff's motion for injunctive relief will be denied. However, the jury found that Fort Morgan school district engaged in intentional discrimination in violation of federal law. Although the Court will not order the defendant district to do so herein, we do suggest that the defendant take advantage of any and all available opportunities to educate its administrators and educators in an effort to avoid similar future discrimination. These federal laws are not hollow and should not be treated so cavalierly by persons who are in positions to ensure that the purposes underlying such laws are truly fulfilled.

### 3. Prejudgment Interest on Back Pay Award

■ Under Title VII, a district court may grant prejudgment interest on a back pay award. *Daniel v. Loveridge*, 32 F.3d 1472, 1478 (10th Cir.1994). Thus, the Court will also grant plaintiff's request for prejudgment interest on the back pay award. However, the amount of interest on the back pay award may only be computed by first deducting from the jury's back pay award ($55,000.00) the amount of $15,000.00, the amount by which front pay and back pay damages should be reduced for plaintiff's failure to take reasonable steps to mitigate his damages. The Court has determined that the back pay award should be reduced by this amount, for the reason that all evidence presented during trial indicated that any failure to mitigate damages occurred prior to trial, which is the time covered by the jury's back pay award. Because the Court has ordered instatement in lieu of front pay, the reduction of damages for failure to mitigate must come off the back pay award.

The Court finds that plaintiff is entitled to prejudgment interest on the back pay award of $55,000.00, reduced by a failure to mitigate damages in the amount of $15,-000.00, yielding a net back pay award of $40,000.00. The determination of an appropriate rate of interest on a back pay award is discretionary. *Poindexter v. Atchison, Topeka and Santa Fe Railway Co.*, 1996 WL 507303 (D.Kan.1996). Plaintiff in this case has suggested that the appropriate rate of interest should be the Internal Revenue Service prime rate, which has been nine percent from September 1995 to present, except for the period of April 1, 1996 to June 30, 1996, at which time the interest rate was eight percent. The defendant has argued that the interest rate proposed by plaintiff is extremely high and erroneously accrued on a daily basis. Defendant proposes instead that the appropriate rate for prejudgment interest should be the treasury rate, referred to in 28 U.S.C. § 1961, and should be compounded annually.

Courts have adopted many different approaches to resolving prejudgment interest issues. However, courts, with very few exceptions, recognize that prejudgment interest helps make victims of discrimination whole and compensates them for the true cost of money damages incurred. An award of prejudgment interest also recognizes that victims of discrimination should not be penalized for delays in the judicial process and the discriminating employers should not benefit from such delays. Prejudgment interest compensates a victim of discrimination for the time value of lost money as well as the effects of inflation. *See e.g., United States v. City of Warren, Michigan*, 138 F.3d 1083, 1094–96 (6th Cir.1998)(rejecting interest rate based on consumer price index as an award that fails to compensate victim of discrimination for the time value of the lost use of money and the ability to generate wealth); *Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039 (W.D.N.Y.1997) (prejudgment interest computed pursuant to 28 U.S.C. § 1961); *Reed v. NDC Megamarts, Inc.*, 73 F.3d 364 (7th Cir.1996)(stating district judge has two options when awarding prejudgment interest and there is no statutory rate: the prime rate of interest which can be accessed

in tables published by the Federal Reserve and the rate, normally higher, that the defendant pays for unsecured loans); *Barvick v. Cisneros,* 953 F.Supp. 341 (D.Kan.1997)(awarding prejudgment interest on back pay award at the rate of ten per cent per year); *Poindexter v. Atchison, Topeka and Santa Fe Railway Co.*, 1996 WL 507303, (D.Kan.1996)(awarding prejudgment interest, to be compounded annually as set forth in 28 U.S.C. § 1961).

The Court has elected to follow the lead of the Kansas district court in its recent opinion, *Barvick v. Cisneros,* 953 F.Supp. 341 (D.Kan.1997). The Court finds that plaintiff Lance Carr is entitled to recover prejudgment simple interest on the reduced back pay award ($40,000.00) at the rate of 10% per annum, from September 1, 1995 to the date of entry of judgment. This award of prejudgment interest is intended to compensate plaintiff for the time value of money and the lost of investment opportunities or the ability to generate wealth in the market during that period of time and also to compensate plaintiff for delays inherent in the judicial process that would otherwise wrongfully inure to the benefit of the discriminating defendant.

### 4. Attorney's fees

A separate order will be entered by the Court addressing the award of plaintiff's attorney's fees and costs. A separate judgment will be entered as to those issues following issuance of the order determining the amount of attorney's fees to be awarded.

### Conclusion and Order

Accordingly, and for the foregoing reasons, it is therefore

**ORDERED** that plaintiff's Motion for Instatement shall be, and is, **GRANTED.** It is further

**ORDERED** that the defendant, Fort Morgan School District, shall instate plaintiff Lance Carr as a full-time mathematics teacher on the same terms and conditions as any other first year teacher employed by the district for the 1998–1999 academic year. It is further

998

**ORDERED** that plaintiff's Motion for Front Pay shall be, and is, **DENIED**. It is further

**ORDERED** that plaintiff shall be, and is, awarded prejudgment interest on the net back pay award of $40,000.00 (the total back pay award of $55,000 reduced by a failure to mitigate damages in the amount of $15,000), with prejudgment interest to accrue thereon from September 1, 1995 to the date of entry of judgment at the rate of ten percent per annum. It is further.

**ORDERED** that plaintiff's request for injunctive relief shall be, and is, **DENIED**.

Judgment shall be entered accordingly.