Gretchen DANIEL, Plaintiff–Appellee,

v.

Dennis LOVERIDGE and Loveridge Machine & Tool, Inc., a Utah Corporation, Defendants–Appellants.

No. 93–4047.

United States Court of Appeals,
Tenth Circuit.

Aug. 23, 1994.

Virginia C. Lee (Jamis M. Johnson with her on the brief), Salt Lake City, UT, for plaintiff-cross appellant.

Rick J. Sutherland of Sutherland & England, Salt Lake City, UT, for defendants-appellants.

ANDERSON, Circuit Judge,
McWILLIAMS, Senior Circuit Judge, and
SHADUR, Senior District Judge.*

McWILLIAMS, Senior Circuit Judge.

Gretchen Daniel was employed as a machinist by Loveridge Machine & Tool, Inc., a Utah corporation, from April 26, 1987, until September 6, 1988, when she was fired. Daniel thereafter brought suit in the United States District Court for the District of Utah against Loveridge Machine & Tool, Inc., and its president and part owner, Dennis Loveridge, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (1988 & Supp.1992); the Equal Pay Act, 29 U.S.C. § 206(d) (1988); 42 U.S.C. § 1981 (1988 & Supp.1992); and supplemental state claims.

Daniel generally alleged that when she was employed by Loveridge she was paid at a lower rate than her male counterpart, that she was not properly promoted, and was finally unlawfully fired, all in violation of the statutes above mentioned. Daniel also al-

* The Honorable Milton I. Shadur, Senior District Judge, Northern District of Illinois, sitting by designation.

leged that the defendants had inflicted emotional distress upon her and had engaged in conduct intended to interfere with her efforts to obtain other employment.

The defendants, by answer, alleged that at no time was there any discriminatory or otherwise unlawful action taken by them against Daniel and state in their brief at p. 5 that she was fired "largely" because of poor work performance and a generally negative work attitude.

Prior to trial, certain of Daniel's claims were dismissed. The case was thereafter tried to the court on August 1, 2, and 3, 1990. On August 13, 1990, the court entered an order dismissing the rest of Daniel's claims on the merits, with prejudice, but reserving judgment, however, on Daniel's claim of wrongful termination of employment in violation of Title VII.

On October 31, 1991, the court entered an order and judgment wherein it found for Daniel on her Title VII claim and awarded her $12,360 as back pay, $10,000 as compensatory damages, plus prejudgment interest and reasonable attorney's fees, the amount of each to be determined upon "proper application."

Both parties appealed the order and judgment on October 31, 1991. In view of the fact that the district court in its order of October 31, 1991, did not determine and fix the amount of prejudgment interest, this Court notified the parties that we were considering the summary dismissal of both appeals for lack of jurisdiction. Both parties were requested to submit memorandum briefs on the jurisdictional issue. On June 2, 1992, this Court dismissed both appeals on the basis that "[t]he judgment being appealed is not final because the award of prejudgment interest was not reduced to a sum certain."

After hearing, the district court, on October 2, 1992, vacated its judgment of October 31, 1991, and entered judgment in favor of

Daniel against the defendants in the amount of $12,360, said sum representing back pay, and an additional sum of $3,894.20 representing prejudgment interest running from Daniel's date of firing, September 6, 1988, until the date of the judgment of October 31, 1991, and a further judgment awarding Daniel the sum of $16,910.52 in attorney's fees. In its order of October 2, 1992, the district court specifically declined to award Daniel *any* sum as compensatory damages.

As concerns the back pay award of $12,360, the district court in its order of October 2, 1992, stated that at trial Daniel "proved back pay damages under Title VII in excess of $12,360," and further the district court in that same order refused to deduct from the back pay award the state unemployment compensation received by Daniel.

As concerns its award of attorney's fees, the district court in its order of October 2, 1992, observed that although Daniel did not succeed on four of her five claims, she did prevail on her Title VII claim, which the district court characterized as the "central portion" of her case, and accordingly granted Daniel sixty percent of the attorney's fees requested, which was $16,910.52.

On or about October 20, 1992, Daniel filed a motion to amend or alter the judgment of October 2, 1992, by increasing the back pay from the $12,360 award to $28,343.29 in order "to conform to the evidence proved at trial" and by also increasing by a corresponding amount the prejudgment interest to $8,930.08.

On January 29, 1993, the district court granted Daniel's motion to alter or amend and entered judgment on February 1, 1993, in favor of Daniel against both defendants in the amount of $28,343.29 for back pay and also entered judgment in the amount of $8,930.08 as prejudgment interest on the amended back pay award.[1]

In arriving at the figure of $28,343.29 for back pay, the district court, agreeing with

---

1. The judgment entered February 1, 1993, incorporated therein the award of attorney's fees allowed in the prior order of October 2, 1992, namely $16,910.52.

Daniel, held that Daniel had proven at trial back pay in a total amount of $39,114, and then deducted therefrom the sum of $10,-770.71, which sum represented the amount of wages received by Daniel from her date of discharge to the date of the first judgment entered on October 31, 1991. The defendants appeal the final and last judgment entered by the district court on February 1, 1993.

## I. *Prima Facie Case of Discriminatory Retaliation*

Defendants first argue that Daniel failed to establish, *prima facie*, that her firing was the result of discriminatory retaliation under Title VII, and that the district court erred in so finding. As above mentioned, Daniel was employed at Loveridge Machine & Tool, Inc., from April 26, 1987, to September 6, 1988, when Dennis Loveridge fired her. A complete transcript of the testimony adduced at trial is not before us, but counsel set forth in their respective appendices the testimony each relies on. Daniel testified that she was the only woman machinist at Loveridge, that she was harassed by her fellow male employees because of her gender throughout her entire employment with Loveridge, and that management knew about such and did nothing to correct it. Further, that as a result thereof, Daniel filed on June 1, 1988, a charge of discrimination with the Industrial Commission of the Utah Anti–Discrimination Division, which was later withdrawn. After her discharge, she filed a similar charge with the Equal Employment Opportunity Commission (EEOC) on September 7, 1988. The EEOC gave Daniel a right to sue notice on November 28, 1988.

There was also testimony that Daniel was harassed because of her gender by her supervisor on several occasions in July and August, 1988, and that on August 30, 1988, and again on September 2, 1988, she made formal complaint of such to her foreman. And, as stated, she was then fired four days later on September 6, 1988.

42 U.S.C. § 2000e–3(a) provides in pertinent part as follows:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

■ To establish a *prima facie* case of discriminatory retaliation Daniel must show (1) that she engaged in protected opposition to discrimination based on gender; (2) that she suffered adverse action from her employer; and (3) that there was a causal connection between the employer's adverse action and the employee's protected activity. *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir.1993); *Purrington v. Univ. of Utah*, 996 F.2d 1025, 1033 (10th Cir.1993); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993).

■ In their brief, at p. 11, the defendants concede that Daniel did establish, *prima facie*, that she engaged in protected opposition to discriminatory action by the defendants based on her gender and that she had suffered adverse action from her employer. Counsel's position on this particular matter is, as set forth on p. 11 of his brief, that "[i]t is the causal link between any protected activity engaged in by plaintiff and the employer's action which plaintiff has failed to establish in this case."

At trial, Dennis Loveridge testified that Daniel was fired because of her poor work performance, general bad attitude, and the fact that she had caused Loveridge Machine & Tool, Inc. to lose a contract. He also testified that Daniel's complaints about gender harassment on the job by fellow employ-

ees and her formal complaints with the Utah Industrial Commission and the EEOC had nothing to do with her firing. However, in her examination of Dennis Loveridge, Daniel's counsel tried to show that in his earlier deposition Dennis Loveridge had testified that two factors, out of many, which went into his decision to fire Daniel were the fact that she filed a complaint with the Utah Industrial Commission and the further fact that she had complained to her foreman on August 30 and September 2, 1988, about advances made to her by her supervisor during July and August, 1988.

Counsel in this Court differ as to whether in his live testimony at trial Dennis Loveridge did, or did not, "recant," and disavow, his testimony given at deposition. We decline to be drawn into this somewhat semantical dispute. However, in this regard we do note that in her questioning of Dennis Loveridge counsel for Daniel elicited the following concerning Dennis Loveridge's testimony at deposition.

A. "Actually, when he [Dave, Daniel's foreman] came to me and talked to me about it, and wanted to know what to do; and so he called the Industrial Commission about it, and talked to them."

Q. "This is approximately when?"

A. "Probably the last week, or two, of her employment."

Q. "So Gretchen complained to Dave. Dave told you about it. Dave called the Industrial Commission."

A. "Yes."

Q. "Was this Complaint on Gretchen's part against Ron, a factor in your decision to fire her?"

A. "Oh, yes, it was a factor. It was involved. It was one of many complaints."

Evidence showing that an employer's adverse employment action was caused by an employee's protected opposition to discrimination in the workplace based on gender is generally circumstantial in nature. *Wilson v. State of Okla. ex rel., Okla. Employment Sec. Comm'n,* 726 F.2d 636, 637 (10th Cir. 1984); *see also United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (in discrimination cases, "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes."). We believe there is sufficient circumstantial evidence in the instant case to support the district court's finding that there was a "causal link between any protected activity engaged in by plaintiff and the employer's action." In addition, in the instant case there is testimony by Dennis Loveridge in his deposition that Daniel's various complaints about gender-based harassment were "a factor" in his decision to fire her.[2]

## II. *Back Pay and Prejudgment Interest*

In its last and final judgment entered on February 1, 1993, the district court entered judgment in favor of Daniel against both defendants in the amount of $28,343.29 as back pay and also entered an additional judgment in favor of Daniel against both defendants in the amount of $8,930.08 as prejudgment interest on the back pay award. On appeal, defendants argue that the back pay award is excessive and should be reduced, and that accordingly the award of prejudgment interest should be reduced by a corresponding amount.

**2.** On page 4 of defendants-appellants' brief, counsel frames one of the issues to be decided as follows: "Did defendants establish a legitimate non-discriminatory reason for their conduct which was not rebutted by the plaintiff?" We do not find that counsel thereafter in his brief pursued, at least in any detail, this particular issue, though there is what might be considered a passing reference thereto in the last paragraph on pages 15 and 21 of the brief. In any event, the record supports the district court's finding that the non-discriminatory reason offered by defen-

dants for firing Daniel was pretextual. *Sorensen v. City of Aurora,* 984 F.2d 349, 353 (10th Cir. 1993) (once the defendant presents evidence of a nondiscriminatory reason for the adverse action, the plaintiff may nevertheless prevail if she shows that the proffered reason was mere pretext for discrimination). We reject the suggestion of counsel made in oral argument that *St. Mary's Honor Ctr. v. Hicks,* — U.S. —, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) dictates a reversal of the instant case.

"Back pay" as determined in the instant case represented the amount of money Daniel would have earned from the date she was unlawfully fired, i.e. September 6, 1988, to the date of the first judgment entered on October 31, 1991. The district judge determined that during that time she would have earned a total amount of $39,114, and then he deducted therefrom the sum of $10,770.71, which sum represented the amount actually earned by Daniel from other employment after September 6, 1988, and before the date of the first judgment entered on October 31, 1991.

The defendants' position on this matter is that any back pay award should represent monies Daniel would have received from Loveridge from the date of her firing, September 6, 1988, to the date she was first employed after that firing, which occurred three months later on December 6, 1988.

A review of Daniel's work record subsequent to her firing by Loveridge on September 6, 1988, may place this matter in better focus. Subsequent to September 6, 1988, Daniel was first employed by Plastic World, Inc. on December 6, 1988, as a machinist at $6 per hour. She worked there only nine days and the record before us does not indicate just why she was laid off. In any event, for that nine-day period Daniel earned $501.

Thereafter, Daniel was employed by American Precision Manufacturing from January 1, 1989, until July 30, 1989, at $6 per hour, at which time the company went out of business. For that period of time Daniel earned $7,883.39.

From August 1, 1989, until September 23, 1989, Daniel was employed by Valley Machine & Manufacturing, Inc. at $5.50 per hour, when she was laid off in a reduction of force. She earned $2,386.32 at Valley. Daniel testified that after being laid off by Valley, from October 6, 1989 until February 7, 1990, she applied for 37 jobs, 32 as a machinist, but was not offered any employment.[3]

As indicated, the defendants argue that any award of back pay should run only from the date of firing, September 6, 1988, until the date she accepted what defendants claim was "substantially equivalent employment" with Plastic World on December 6, 1988. Defendants calculate such would represent 516 hours at $6.15 per hour, or back pay in the amount of $3,173.40. From that amount defendants would subtract the sum of $1,742, representing unemployment compensation received by Daniel, and that accordingly any back pay award should only be in the sum of $1,431.40. And counsel asserts that if the back pay award be reduced, then prejudgment interest should also be reduced proportionately.

42 U.S.C. § 2000e–5(g) provides that if a court finds that an employer has intentionally engaged in an unlawful employment practice, the court may, *inter alia*, order back pay "or any other equitable relief as the court deems appropriate." Significantly, in our case, that statute goes on to provide that "[i]nterim earnings or amounts earnable with reasonable diligence by the person ... discriminated against shall operate to reduce the back pay otherwise allowable."

This court in *Whatley v. Skaggs Cos., Inc.*, 707 F.2d 1129, 1138 (10th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983), stated that 42 U.S.C. § 2000e–5(g) "leaves to the discretion of the trial court the amount of back pay to be awarded a successful plaintiff in an employment discrimination action. Absent an abuse of that discretion, the appellate court will not disturb the trial court's determination." *See also Sears v. Atchison, T. & S. Ry.*, 645 F.2d 1365, 1378 (10th Cir.1981), *cert. denied*, 456 U.S. 964, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982).

In our view, the district court did not abuse its discretion in setting Daniel's back pay at $28,343.29. In arriving at that figure, the district court first found that Daniel's back pay from the date of her firing to

---

**3.** There is no suggestion that Loveridge offered to reinstate Daniel. Rather, Dennis Loveridge indicated quite clearly that he would never rehire Daniel because "there would never be a spirit or trust."

the date of the first judgment on Daniel's Title VII claim would have been $39,114. As we understand it, defendants do not challenge the accuracy of that figure. Then, as the statute dictates, the district court deducted therefrom Daniel's "interim earnings" in the amount of $10,770.71. And as we understand it, defendants do not challenge the accuracy of that figure. After such deduction, the district court determined Daniel's back pay to be $28,343.29. We find no abuse of discretion on the part of the district court in its determination of back pay.[4]

The defendants simply did not show that the nine-day employment which Daniel obtained with Plastic World on December 6, 1988, was the "substantial equivalent" to her prior employment with Loveridge from which it has now been determined she was unlawfully fired on September 6, 1988.

■ As concerns prejudgment interest, defendants argue that "any change" in the back pay award "necessitates a corresponding change in the prejudgment interest levied on that amount." The answer to that particular argument is that we have made no change in the district court's award of back pay. Under Title VII, a district court is authorized to grant prejudgment interest on a back pay award. *Loeffler v. Frank*, 486 U.S. 549, 557–58, 108 S.Ct. 1965, 1970–71, 100 L.Ed.2d 549 (1988). Otherwise, the employer would have an "interest free" loan on wages due, but unpaid. *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992).

### III. *Attorney's Fees*

■ As indicated, Daniel asked the district court to allow her attorney's fees in a total amount $28,184.20. The district court, noting that Daniel had prevailed on only one of her five claims, awarded her attorney's fees in the amount of 60% of her request, namely $16,910.52.

Defendants argue that Daniel should receive as attorney's fees only one-sixth of the amount sought, i.e. $4,697.37. They assert that Daniel's original complaint contained a cause of action based on 42 U.S.C. § 1981, which was dismissed prior to trial. The defendants go on to assert that they were victorious on four out of five causes of action in the amended complaint which went to actual trial. Accordingly, they argue that since they ultimately prevailed on five of six claims alleged by Daniel, she ought to receive one-sixth of her requested attorney's fees.

In allowing attorney's fees, the district court observed that Daniel had prevailed on the "central portion" of her case. We are not inclined to disturb that assessment. Daniel has now made a substantial recovery on the "central portion" of her case, namely

---

4. We reject the suggestion that the back pay award to Daniel should be reduced by unemployment compensation she received from the state. We find nothing in the record before us concerning the type or amount of Loveridge, Inc.'s contribution to any unemployment compensation fund. In this general regard, we note that in *EEOC v. Sandia Corp.*, 639 F.2d 600, 624–25 (10th Cir.1980), we rejected the employer's argument that failure to offset would result in a windfall to the plaintiff. *Id.* at 625. We recognize that in *Sandia*, the employer did not contend that he had made any contributions to an unemployment compensation fund. *Id.* at 626. However, we held that the matter was within the court's discretion, citing *NLRB v. Gullett Gin, Co.*, 340 U.S. 361, 71 S.Ct. 337, 95 L.Ed. 337 (1951). *See EEOC v. Enterprise Ass'n Steamfitters Local No. 638*, 542 F.2d 579, 592 (2d Cir. 1976) (utilizing the discretionary rule, but holding that it was not an abuse of discretion to deduct unemployment compensation from back pay in a Title VII case), *cert. denied*, 430 U.S.

911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). *Accord, Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711, 721 (7th Cir.1969). *But see Hunter v. Allis–Chalmers Corp. Engine Div.*, 797 F.2d 1417, 1428–29 (7th Cir.1986) (assuming the applicability of the discretionary rule, and upholding the district court's refusal to deduct from the back pay award unemployment compensation received). *See also Rasimas v. Mich. Dept. of Mental Health*, 714 F.2d 614, 627–28 and n. 13 (6th Cir.1983) (holding that, in a Title VII case, unemployment compensation is a collateral source and should not offset a successful plaintiff's back pay, even where the employer makes a contribution to the unemployment compensation fund in the form of taxes), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 537 (1984). *Accord, Brown v. A.J. Gerrard Mfg. Co.*, 715 F.2d 1549, 1550–51 (11th Cir.1983) (en banc); *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77, 81–85 (3rd Cir. 1983).

her Title VII claim. 42 U.S.C. § 2000e–5(k) provides that the prevailing party in a Title VII proceeding may be allowed "reasonable attorney's fee[s]." We find no abuse of discretion on the part of the district court in setting Daniel's attorney's fees in the sum of $16,910.52.

Judgment affirmed.