UNITED STATES COURT OF APPEALS
**Filed 1/10/96**
TENTH CIRCUIT

RITA BERNARD ZIEGLER,

      Plaintiff - Appellee,

    v.

K-MART CORPORATION,

      Defendant - Appellant,

and

JANET FALKNER,

      Defendant.

No. 95-3019

(D.C. No. 92-CV-1464-WEB)

(D. Kansas)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON, McKAY,** and **JONES,**[**] Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of this

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Nathaniel R. Jones, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9.  This cause is therefore ordered submitted without oral argument.

The defendant, K-Mart Corporation, appeals the district court's judgment finding that it violated Title VII of the Civil Rights Act and the Kansas Act Against Discrimination when it terminated the employment of plaintiff Rita Bernard Ziegler.  We affirm.

## BACKGROUND

From 1983 until July 1989, plaintiff Rita Bernard Ziegler, a black female, worked for K-Mart in its Hutchinson, Kansas, store in a variety of capacities.  At that time her name was Rita Bernard.  In July 1989, she was assigned "point of sales" (P.O.S.) duties, which involved computerizing and pricing incoming items and controlling inventory.  P.O.S. duties included accurately recording and pricing merchandise on store shelves, at sales registers and in the main computer.  There was evidence that, because of constant changes in price and in inventory, P.O.S. team members frequently made mistakes.  After some restructuring of work assignments, Ms. Bernard became part of a price maintenance team, which was supervised from May 1991 by K-Mart employee Janet Falkner.

Bill Ziegler, a white male, became the automotive service manager at the Hutchinson K-Mart in 1986.  He and Ms. Bernard began dating in December 1989, but did not reveal that fact to fellow employees until a company party in January 1990.  They

subsequently bought a house together and began living together.  Ms. Bernard notified

K-Mart's personnel director, Jeanette Vierthaler, of hers and Mr. Ziegler's change of

address.  Ms. Bernard testified that Ms. Vierthaler said it would "be better" if one of them

found another job.  Appellant's App. at 80.

While dating, Ms. Bernard and Mr. Ziegler began taking breaks together and

eating meals together in the K-Mart cafeteria.  They further testified that their breaks and

lunches were repeatedly interrupted when Ms. Bernard was called away to remedy some

P.O.S. problem.  Ms. Falkner testified that, while a P.O.S. member would occasionally be

called away from a break or lunch, that would rarely be necessary.  Mr. Ziegler  testified

that he talked to Hutchinson general manager Tom Halbkat about the problem and was

told that it did not look good for the two of them to take breaks together, because

Mr. Ziegler was white and Ms. Bernard was black.

Ms. Bernard and Mr. Ziegler were married in January 1991.  Ms. Bernard, now

Ms. Ziegler, became pregnant in March 1991, and began experiencing problems with her

pregnancy.  Her doctor excused her from work from March 28 until April 12, and

imposed restrictions on her work thereafter.[1]  All of these written medical restrictions

---

[1]She was limited to lifting no more than thirty pounds and to working no more than
eight hours per day.  Subsequently, her doctor issued written orders that she was to avoid
pesticides and other strong chemicals and to avoid climbing over eight feet.  In June her
doctor limited Ms. Ziegler to lifting no more than twenty pounds, to standing no longer
than two hours at a time with breaks in between, to doing no repetitive bending, and to
(continued...)

were given to Ms. Vierthaler, who testified that she had notified the appropriate supervisors to ensure that they were carried out.

There was testimony that K-Mart has a policy of requiring three corrective interviews following a satisfactory annual review before terminating an employee. K-Mart denies that this is an official policy. Ms. Ziegler had consistently received satisfactory annual reviews, including one in June 1990. In August 1990, after the Zieglers informed K-Mart of their shared address, Ms. Ziegler received her first corrective interview. On June 18, 1991, Ms. Ziegler was called in by Ms. Falkner for an interview and was told of various errors she had committed in making price changes and counting inventory. She was placed on 60 days probation, and told that she would be terminated if she did not improve. Ms. Ziegler contested the claimed mistakes and refused to sign the interview form. On that same date, she received an unsatisfactory evaluation on her annual review. On July 3, 1991, Ms. Ziegler was terminated, on the stated ground that she had been "[f]alsifying company document/records, not following proper P.O.S. procedures and completing all required work and records." Appellee's

---

[1](...continued)
working no more than 32 hours per week, and no more than eight hours in a 24-hour period.

Supp. App. Vol. II at 674-75.[2]  She was replaced by Bob McAllister, a white male, who, a few months later, was transferred to the position of claims clerk.

After exhausting all relevant administrative appeals and receiving a notification of right to sue by the Equal Employment Opportunity Commission, Ms. Ziegler brought this action, alleging that, after entering into an interracial relationship with Bill Ziegler, and after becoming pregnant, she was subjected to racial and sexual discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1), and the Kansas Act Against Discrimination ("KAAD"), Kan. Stat. Ann. §§ 44-1001 to 1044.[3]  After a trial to the court, the district court found for Ms. Ziegler, concluding that "plaintiff established a prima facie case of employment discrimination," and that she further proved "that the alleged legitimate reason offered by defendant for the termination was not the true reason but was, in fact, a pretext for discrimination." Ziegler v. K-Mart Corp.,

[2]Other errors asserted as grounds for termination included permitting the sale of a rifle for $144.97 instead of for $157.77 and the sale of a plastic nozzle for $1.27 instead of for $0.99, and the granting of an erroneous discount on potato chips.

[3]Title VII provides in part:

> [I]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a)(1).  Congress added a definitional section in 1978, known as the Pregnancy Discrimination Act, which provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." Id. at § 2000(e)(k).

Findings of Fact and Conclusions of Law at 16 ¶¶ 5, 6 (hereafter "Order"), Appellant's App. at 54. "Simply put, the plaintiff was not treated equally in the terms and conditions of her employment whether as to race or because of her pregnancy, and the defendant is in violation of Title VII and the Kansas Act Against Discrimination." Id. at 18 ¶ 13, Appellant's App. at 56. The court therefore awarded back pay in the amount of $35,674.00, reinstatement "to her position with K-Mart within a reasonable time," and attorneys fees. Id. at 19 ¶¶ 14-17, Appellant's App. at 57. It further awarded $2,000 to Ms. Ziegler under the KAAD, for "pain, suffering and humiliation." Id. at ¶ 18, Appellant's App. at 57. See Kan. Stat. Ann. § 44-1005(k).

K-Mart brought this appeal, arguing that insufficient evidence supports the district court's findings and conclusion that it had violated Title VII. In particular, K-Mart alleges that the court erroneously relied upon comments and events occurring several years before Ms. Ziegler was terminated in finding that general manager Halbkat "fostered a biased, racist, discriminatory attitude at the Hutchinson, Kansas, K-Mart store." Order at 5 ¶ 15, Appellant's App. at 43. It also argues the district court improperly allocated the burden of proof. It further argues that the evidence shows that Ms. Ziegler's medical restrictions resulting from her pregnancy were reasonably accommodated. Finally, K-Mart argues that Ms. Ziegler failed to mitigate her damages, and the court incorrectly calculated the amount of the back pay award. It seeks reversal

and dismissal of Ms. Ziegler's complaint or, alternatively, reversal of the back pay award.[4]

**DISCUSSION**

To prevail under Title VII on a claim of wrongful discharge based on race or gender, including pregnancy, the plaintiff has the "ultimate burden of proving, either directly or indirectly, that [her] discharge was motivated by" racial or gender bias. Elmore v. Capstan, Inc., 58 F.3d 525, 529 (10th Cir. 1995) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)); Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1379 (10th Cir. 1994). While the burden-shifting analysis of McDonnell Douglas v. Green, 411 U.S. 792 (1973), directs the initial presentation of evidence, "after a full trial on the merits, the sequential burden-shifting analysis adopted from McDonnell Douglas 'drops out' of consideration." Elmore, 58 F.3d at 530 n.7; see St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993); Sanchez v. Philip Morris Inc., 992 F.2d 244, 246 (10th Cir. 1993). Thus, we only consider "the single overarching issue whether plaintiff adduced sufficient evidence to warrant [the court's] determination that adverse

_____

[4]K-Mart makes no argument in its briefs, except for a passing reference in its initial list of the issues, concerning the award of reinstatement, the KAAD, and the district court's award of $2,000 for pain and suffering. We have accordingly not addressed those issues in this appeal.

employment action was taken against [her] on the basis of [race or gender]." Fallis v.

Kerr-McGee Corp., 944 F.2d 743, 744 (10th Cir. 1991).[5]

"We review the district court's findings under the clearly erroneous standard."

Elmore, 58 F.3d at 530.  As we have previously stated, factual findings are only clearly

erroneous if they are "'without factual support in the record or if, after reviewing all the

evidence, [the court] is left with the definite and firm conviction that a mistake has been

made.'"  Id. at 531 (quoting Cowles v. Dow Keith Oil & Gas, Inc., 752 F.2d 508, 511

(10th Cir. 1985), cert. denied, 479 U.S. 816 (1986)).


## I. Prior Incidents and Remarks

K-Mart argues the district court erroneously relied upon incidents suggestive of

racial bias occurring several years before Ms. Ziegler's termination, and upon "stray

remarks" not directed at her.  Under 42 U.S.C. § 2000e-5(e), a plaintiff must file a charge

of discrimination within 300 days of the allegedly unlawful event, as a prerequisite to

bringing a Title VII civil suit.[6]  See Martin v. Nannie & the Newborns, 3 F.3d 1410, 1414

(10th Cir. 1993).  The district court relied upon several incidents falling outside the time

---

[5]Accordingly, while K-Mart urges us to find that Ms. Ziegler failed to establish a prima facie case of discrimination, that issue is quite irrelevant now.

[6]This 300 day limitation applies only in those states, like Kansas, which have statutorily prohibited sexual or racial discrimination, and only if the plaintiff has initially instituted state or local proceedings.  42 U.S.C. § 2000e-5(e); see Martin v. Nannie & the Newborns, Inc., 3 F.3d 1410, 1414 n.4 (10th Cir. 1993).

period in which the allegedly discriminatory actions directed at Ms. Ziegler occurred, in concluding that K-Mart management fostered a racist and discriminatory attitude, including "[t]he attitude that black and white persons should not mix." Order at 5 ¶ 15, Appellant's App. at 43. K-Mart argues this was improper.

The district court made findings concerning the various incidents. One occurred at the time Bill Ziegler transferred to the Hutchinson K-Mart. The district court made the following findings regarding this incident:

> Bill Ziegler had been the manager of the automotive repair section of the McPherson, Kansas K-Mart store. The general manager of the K-Mart store in McPherson was James Ford, a black man. James Ford had been an assistant manager at the Hutchinson store before he transferred to McPherson.
>
> When Bill Ziegler transferred from McPherson to Hutchinson, he replaced Jeff Clark, a black man, who transferred to the McPherson store. In effect, Bill Ziegler and Jeff Clark traded jobs. . . .
>
> When Bill Ziegler arrived at the Hutchinson store for his first day at work, he was met by the general manager of the Hutchinson store, Tom Halbkat. Halbkat met him at the front door of the store to let him in and asked who he was. Ziegler replied that he was the new manager of the automotive section. Halbkat responded, "you mean we finally got rid of that nigger?" Halbkat further said that perhaps the two "niggers" in McPherson could get along. Tom Halbkat was not called as a witness to deny that this conversation occurred.

Order at 2-3 ¶¶ 4-6, Appellant's App. at 40-41.

Another incident involved another white male, Steve Miller, whom Ms. Ziegler had dated prior to dating Bill Ziegler. The district court described this incident as follows:

Steve Miller had, in plaintiff's presence, told another employee, Janet Renner, that they should keep their dating a secret as the management at K-Mart store would not look with favor upon a black and white employee dating. Steve Miller was not called as a witness to deny this conversation occurred.

Id. at 3 ¶ 9, Appellant's App. at 41.

One final incident the court recounted involved James Ford, the black man who had been transferred from the Hutchinson store, and a white employee, Janet Renner:

At a Christmas party in 1987 or 1988 at Halbkat's house, James Ford and Janet Renner had a little too much to drink; and, in a spirit of fun, he threw water on her. This resulted in her chasing him down the street outside Halbkat's house. The next day, Ms. Renner apologized but was called into the office and upbraided by Halbkat, who told her that he had a hard time explaining to the neighbors why a white woman was chasing a "nigger" down the street. Again, Halbkat was not called to deny this conversation. The episode was witnessed by Brett Roberts and Janet Faulkner. After Mr. Ford was transferred to the McPherson store, he would call the Hutchinson store to talk with his friend, Ms. Renner. Thereafter, and in the presence of Ms. Faulkner, Halbkat would make comments accusing Ms. Renner of talking to her "nigger" friend again, and being a "nigger lover." Sandra Watkins, a previous employee of K-Mart, testified that on one occasion in the company cafeteria she noted that Janet Renner was upset after Halbkat had gone through the cafeteria line; and, upon inquiry, Janet Renner explained that Mr. Halbkat had accused her of being a "nigger lover" again.

Id. at 5-6 ¶ 17, Appellant's App. at 43-44 (footnote omitted).

We, and other courts, have recognized the "continuing course of conduct doctrine" in Title VII cases, pursuant to which "a claim of discrimination may include challenges to incidents which occurred outside the statutory time limitations of Title VII if the various acts constitute a 'continuing pattern of discrimination.'" Martin, 3 F.3d at 1415 (quoting

- 10 -

Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1543 (10th Cir. 1987)). However, Ms. Ziegler is not challenging those incidents, nor do they form the basis for her Title VII claims in this case. Rather, they were relevant and probative evidence indicating that the management at K-Mart did indeed, as the district court concluded, foster a racist and discriminatory attitude, including the view that relationships between black and white employees were inappropriate. See Pitre v. Western Elec. Co., 843 F.2d 1262, 1266-67 (10th Cir. 1988) ("Particularly when a company's decision-making process has not changed, evidence of prior discrimination 'might in some circumstances support the inference that such discrimination continued.'") (quoting Bazemore v. Friday, 478 U.S. 385, 402 (1986)).

Nor were they simply "stray remarks" within the meaning of Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526 (10th Cir. 1994), in which we observed that "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." Id. at 531. Rather, the comments were unmistakably racist in content, and they clearly conveyed to other employees that the management disapproved of interracial relationships. Thus, they were relevant and probative of the motivations and intentions of K-Mart's management when Ms. Ziegler experienced harassment and ultimate termination after she entered into an interracial relationship. We therefore perceive no error in the district court's reliance on those incidents and

comments in concluding that Ms. Ziegler met her burden of showing intentional discrimination.

## II. Sufficiency of Evidence

K-Mart argues that the district court erred by placing the burden on K-Mart to prove that its termination of Ms. Ziegler was lawfully motivated, rather than placing the burden on Ms. Ziegler to prove that K-Mart's actions were unlawful. K-Mart characterizes the court's error as follows:

> the trial court rejected the defendant/appellant's nondiscriminatory reason for placing plaintiff on probation and ultimate discharge as not 'creditable' [sic] and did so without requiring plaintiff to offer proof that plaintiff was intentionally treated differently by the defendant (i.e. that other male or nonminority employees similarly situated continued to repeatedly make the same kind of pricing errors without disciplinary action being taken.)."

Appellant's Br. at 42.

In St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993), the Supreme Court reiterated that "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Id. at 2747 (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)). The Court further clarified the significance of a determination that the defendant's proffered reasons for terminating the plaintiff are pretextual: "[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) *may, together with the elements of the prima*

*facie case,* suffice to show intentional discrimination." Id. at 2749 (emphasis added).
While they do not compel such a finding, they permit the finder of fact--the district court
in this case--to draw that inference. See Randle v. City of Aurora, 69 F.3d 441, 451 (10th
Cir. 1995) ("Thus, a showing of pretext is evidence which allows a jury to infer
discriminatory intent."); Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1379-81 (10th Cir.
1994); Durham v. Xerox Corp., 18 F.3d 836, 839-40 (10th Cir.), cert. denied, 115 S. Ct.
80 (1994).

To the extent K-Mart argues the district court impermissibly concluded that its
finding that K-Mart's explanations were pretextual compelled the conclusion that
Ms. Ziegler had met her "ultimate burden" of proving intentional discrimination, it simply
misreads the district court's opinion. The court found that "[t]he credible evidence leads
the Court to the conclusion that plaintiff was terminated solely because of her race and
her association with, and marriage to, Bill Ziegler." Order at 14 ¶ 40, Appellant's App. at
52. It further found that "[t]he reasons offered by the defendant for plaintiff's termination
were clearly *a pretext for discriminatory actions, and the testimony offered by the
defendant on these matters was not credible."* Id. at ¶ 42, Appellant's App. at 52
(emphasis added).

While a Title VII plaintiff must prove intentional discrimination, "she can do so
with either direct or inferential proof." Randle, 69 F.3d at 455; see also Brinkley-Obu v.
Hughes Training, Inc., 36 F.3d 336, 354 (4th Cir. 1994) ("[Plaintiff] may prove her Title

- 13 -

VII case through direct evidence of discrimination or through the cumulative effect of indirect evidence of her employer's motivation."). In this case, she did it with inferential proof. While there was evidence that Ms. Ziegler had committed pricing errors, as K-Mart contends, there was also evidence supporting the district court's conclusion that those claimed errors were merely a pretext for discrimination because of her race and her relationship with, and subsequent marriage to, a white person. There was testimony that Ms. Ziegler's successor, a white male, was not terminated although he "had problems with everything" relating to the P.O.S. duties. Appellee's Supp. App. Vol. II at 455. There was also testimony that pricing errors were common, but no other employees were terminated like Ms. Ziegler. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer, 470 U.S. 564, 574 (1985); see Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 F.3d 1482, 1492 (10th Cir. 1994).

Additionally, the district court necessarily made credibility determinations. Fed. R. Civ. P. 52(a) requires us to give "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses." See Anderson, 470 U.S. at 574-75 (noting that Rule 52(a) emphasizes "the special deference to be paid credibility determinations" made by the fact finder); Metz, 39 F.3d at 1492. We conclude that the district court's findings in this case are supported by the record and are not clearly erroneous.

Having carefully reviewed the record, we reach the same conclusion with respect to Ms. Ziegler's claim based upon the Pregnancy Discrimination Act. The record supports the district court's conclusions that "[t]he management of K-Mart made no attempt to accommodate plaintiff's medical restrictions or to see that the same were followed" and that they "gave no consideration to the fact that plaintiff was pregnant, and had complications due to her pregnancy which restricted her work, in arriving at the determination of her deficiencies." Order at 8 ¶ 21, 12 ¶ 32, Appellant's App. at 46, 50. Additionally, there was testimony that K-Mart regularly accommodated other employees with medical restrictions. See Appellee's Supp. App. Vol. I at 248-49.

## III. **Award of Damages**

Under Title VII, the court may award a successful plaintiff any appropriate relief, including reinstatement, back pay or "any other equitable relief" the court deems appropriate. 42 U.S.C. § 2000e-5(g). The district court awarded Ms. Ziegler back pay in the amount of $35,674, calculated by taking her salary for her last full year of employment at K-Mart and projecting that from the date of her termination to the date of trial, and deducting therefrom the wages she actually earned during that time period.[7] It

---

[7]Ordinarily, a back pay award would cover the time period up until the date of judgment. See Daniel v. Loveridge, 32 F.3d 1472, 1477 (10th Cir. 1994). The district court's order stated it was awarding back pay from the date of termination to the date "of trial." Ms. Ziegler makes no argument that there is any error, so we do not address it.

(continued...)

also held that, following her termination, she "attempted to mitigate her damages by starting a child-care business." Order at 15 n.9, Appellant's App. at 53. K-Mart challenges the amount of the back pay award, and argues that Ms. Ziegler failed to mitigate her damages, as required for a Title VII plaintiff. See Acrey v. American Sheep Ind. Ass'n, 981 F.2d 1569, 1576 (10th Cir. 1992); EEOC v. Sandia Corp., 639 F.2d 600, 627 (10th Cir. 1980).

The amount of back pay awarded to a successful Title VII plaintiff is committed to the sound discretion of the district court. See Daniel v. Loveridge, 32 F.3d 1472, 1477 (10th Cir. 1994); Whatley v. Skaggs Cos., 707 F.2d 1129, 1138 (10th Cir.), cert. denied, 464 U.S. 938 (1983). We therefore will only reverse that determination for an abuse of discretion. Id.

With respect to mitigation, "[a] claimant need only make a reasonable and good faith effort, and is not held to the highest standards of diligence." Spulak v. K Mart Corp., 894 F.2d 1150, 1158 (10th Cir. 1990). Furthermore, the employer bears the burden of showing a lack of reasonable diligence. Id. We have held that the employer may satisfy that burden by showing "'(1) that the damage suffered by plaintiff could have been avoided, i.e. that there were suitable positions available which plaintiff could have

---

[7](...continued)
Additionally, back pay awards ordinarily include prejudgment interest. Id. The district court's order makes no mention of such interest, but, again, Ms. Ziegler makes no argument about it.

- 16 -

discovered and for which [she] was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position.'" <u>Sandia Corp.</u>, 639 F.2d at 627 (quoting <u>Sias v. City Demonstration Agency</u>, 588 F.2d 692, 696 (9th Cir. 1978)). K-Mart has presented no evidence of "suitable positions available which plaintiff could have discovered and for which [she] was qualified." <u>Id.</u> Ms. Ziegler, by contrast, testified that she sought employment at several establishments in Hutchinson, and ultimately obtained a child care license when she was unable to find work elsewhere. <u>See</u> Appellant's App. at 94. We therefore find no error in the district court's conclusion that Ms. Ziegler satisfied her duty to mitigate her damages.

K-Mart also argues that, because Ms. Ziegler admitted that she would have been limited to working 32 hours until the birth of her child because of the medical restrictions her doctor imposed, the district court should have deducted from its award pay representing the eight fewer hours per week. K-Mart further asserts that the court should have deducted the equivalent of six weeks pay, the time following the birth of her child when Ms. Ziegler would not have been working. Given the wide latitude afforded the judge in this area, we cannot say that the court abused its discretion in calculating the back pay award in the way it did.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge